Lago & Sons Dairy v. H.P. Hood, Inc.  CV-92-200-SD  09/03/96 P
                  UNITED STATES DISTRICT COURT FOR THE

                       DISTRICT OF NEW HAMPSHIRE


Lago & Sons Dairy, Inc.;
Michael Lago


        v.                                    Civil No. 92-200-SD


H.P. Hood, Inc.


                         O R D E R


        Presently before the court are plaintiffs' motion for

reconsideration of the definition of "Hood product", to which

defendant objects, and defendant's renewed motion for partial

summary judgment on Counts IX and X, to which plaintiffs object

and defendant replies thereto.


                         Discussion

1.  Motion to Reconsider, documents 153, 157[1]

        The entire present controversy stems from the court's

June 20, 1995, ruling on plaintiffs' antitrust standing.[2]  See

_____

        [1]Plaintiffs' original motion assumed defendant's non-
concurrence in the relief requested, and did not indicate whether
such concurrence was expressly sought.  See Local Rule 7.1(c).
On May 1, 1996, plaintiffs submitted an addendum, document 157,
to their motion effectively curing the local rules violation.

        [2]The court notes that its antitrust standing discussion was
limited to Counts IX and X of the amended complaint.
Accordingly, the market analysis, and corresponding definition of
"Hood dairy products", only addressed the tertiary-line injury

Lago & Sons Dairy, Inc. v. H.P. Hood, Inc., 892 F. Supp. 325, 337-47 (D.N.H. 1995). In defining the relevant market, the court accepted Lago's narrow market definition "as the retail market for Hood dairy products." Id. at 343. Following this ruling, a dispute arose between the parties as to whether the "retail market for Hood dairy products" included both Hood-branded products and private-label products or simply those products bearing the Hood label only. This dispute was put to the court for resolution, which in its order of April 10, 1996, found that "the relevant market, as it must be in order for plaintiffs to sustain their antitrust standing, is defined to include Hood-branded products only, and specifically excludes private-label products." Order of April 10, 1996, at 5. Lago now moves the court to reconsider such narrow definition. Documents 153, 157.

Lago originally contended

> that it was injured as a result of the inability of its retail customers (i.e., small independent retailers) to compete with Hood's direct-buy retailers (i.e., chain stores) for the sale of Hood dairy products to the ultimate consumers of those products. Lago contends that its retail store customers were forced to stop buying Hood products from Lago and began purchasing their dairy products from other dairies and, as a result thereof, Lago suffered lost sales and profits.

Lago & Sons Dairy, Inc., supra, 892 F. Supp. at 342.

---

claims.

2

> In other words, Lago does not seek lost profits
> from the inability of its retailers to compete
> with Hood's direct-buy retailers for the sale of
> Hood products during the time when Lago was
> selling Hood products to such retailers.  Instead,
> Lago seeks lost profits from the sales it lost
> after certain retail customers stopped purchasing
> Hood dairy products from Lago and began purchasing
> dairy products from other dairies because Lago's
> prices on Hood products were too high.

Id. at 344-45 (footnote omitted).

Thus narrowing "its damages claim to include only the retail store customers it lost to competitors because of price," id. at 345, the court reiterates that "Lago's damages are only indirectly related to the impact Hood's alleged price discrimination had on competition between Hood's direct-buy retailers and Lago's retail store customers," id.

As part of their motion for reconsideration, plaintiffs now argue that

> [t]he evidence of private label price
> discrimination should also be available to the
> plaintiff[]s in their third line price
> discrimination action as the Hood private label
> pricing had an adverse effect upon the market for
> the Hood branded label products.  Most of Lago's
> "mom and pop" customers did not split their fluid
> orders between "Hood brand" and a non Hood private
> label.  The majority of the Lago "mom and pops"
> bought all of their dairy products from Lago.  To
> the extent that Hood engaged in price
> discrimination with its private label, that
> discrimination would have a disproportionately
> anticompetitive effect on the "mom and pop," that
> still desired to sell the Hood brand.

3

Plaintiffs' Motion for Reconsideration ¶ 3. "Because the Lago mom and pop stores, in some cases, stopped purchasing Hood products from Lago and switched to other dairies in search of a better branded and/or private label package, Hood's private label pricing did indeed [a]ffect and have an impact on the market for Hood branded product . . . ." Plaintiffs' Memorandum at 5.

Lago thus argues that, in addition to including Hood-branded products, the market definition should be slightly enlarged in order to permit Lago "to demonstrate that Hood used its private label as a tool to adversely affect competition between the 'mom and pops' that bought the package of Hood branded and Hood nonbranded products, and those retail chains that purchased the same package at a discriminatorily lower price." Plaintiffs' Motion for Reconsideration ¶ 4. The court, upon reconsideration, agrees. Accordingly, the motion for reconsideration is granted and that part of the court's April 10, 1996, order defining "Hood dairy products" is vacated. The relevant market for plaintiffs' antitrust allegations is the market for Hood dairy products, herein defined to include both Hood-branded and private-label products manufactured by Hood.[3]

---

[3]Such definition notwithstanding, plaintiffs' ability to marshall the relevant data to their ultimate benefit is limited by Hood's small private-label market presence in New Hampshire during the relevant time period, see Affidavit of Art Ledue ¶ 2 (attached to Defendant's December 11, 1995, Memorandum of law as

## 2. Hood's Renewed Motion for Summary Judgment, document 166

Hood again seeks summary judgment as to Counts IX and X due to a claimed lack of standing on plaintiffs' part to assert tertiary-line injury claims under the Robinson-Patman Act.  We have been here before.  See Lago & Sons Dairy, Inc., supra, 892 F. Supp. at 337-47.

Previously, summary judgment was denied because upon accepting Lago's narrow definition of the affected market--Hood dairy products[4]--the court found

> that the effect of Hood's purported price discrimination was to reduce competition for the sale of Hood dairy products at the retail level between large direct-buy retailers and smaller independent retailers purchasing through Lago.

Id. at 344.  Hood now reasserts its summary judgment argument because "Lago's recent evidentiary submissions . . . establish conclusively that the product market in which retail stores competed for the resale of dairy and ice cream products consisted

---

Exhibit C) (Hood supplied approximately 10 percent of private-label milk to Shop 'N Save stores in New Hampshire), as well as by the limited duration of plaintiffs' own Hood-supplied private label, see Affidavit of Robert Lago ¶ 5 (attached to Plaintiffs' Motion for Reconsideration as Exhibit B) ("H.P. Hood did offer a private label to Lago in the 1990 time frame"); October 7, 1994, Deposition of Robert W. Lago vol. 1, at 47 (Lago sold private label milk in 1990-1991 time frame).

[4]Although originally defined to include Hood-branded products only, see Order of April 10, 1996, at 5, the court has herein redefined the phrase to include both Hood-branded products and private-label products manufactured by Hood.

of a number of suppliers' products in addition to Hood's product."  Defendant's Renewed Motion ¶ 4 (footnote omitted).

Contrary to defendant's argument, the relevant product market can be limited exclusively to Hood products, as between Hood, Lago, and Lago's customers.  See Monahan's Marine, Inc. v. Boston Whaler, Inc., 866 F.2d 525, 528-29 (1st Cir. 1989) (market limited to Boston Whaler boats); Hygrade Milk & Cream Co. v. Tropicana Prods., Inc., No. 88 Civ. 2861 (SAS), 1996 WL 257581 (S.D.N.Y. May 16, 1996) (market limited to Tropicana orange juice).  As these and other cases make clear, not only can a single product constitute the relevant market for this type of Robinson-Patman claim, but third-line injury plaintiffs are proper advocates to prosecute same.  See Hygrade, supra, 1996 WL 257581, at *3 n.6 ("Typically competitive injury may occur at three levels. . . .  [A] tertiary-line violation occurs where the seller's price discrimination harms competition between the customers of the favored purchasers and disfavored purchasers even though the favored purchasers and disfavored purchasers do not compete." (citing Falls City Indus., Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 436 (1983))); Morris Elecs., Inc. v. Mattel, Inc., 595 F. Supp. 56, 61 (N.D.N.Y. 1984) (where a "plaintiff alleges a loss in sales and profits with respect to particular finished products because its customers' ability to resell those

6

same products is impaired by the defendants' illegal conduct[,] [s]uch allegation[s] present[] a particularly close connection between the violation and the injury, and has been recognized as a basis for supplier standing" (citation and footnote omitted)).

Accordingly, and without expressing any judgment as to plaintiffs' ability to sustain the other elements of their Robinson-Patman claims,[5] see Lago & Sons Dairy, Inc., supra, 892 F. Supp. at 346 n.13 ("The court notes that the antitrust standing hurdle is only the first of several hurdles Lago must clear to recover treble damages under § 4 of the Clayton Act. At trial, Lago will be required to prove that Hood violated the Robinson-Patman Act in the manner alleged and that Lago suffered an actual injury attributable to said violation. Lago must also submit sufficient evidence to support a 'just and reasonable inference' of damage." (internal citation and quotation omitted)), defendant's renewed motion for summary judgment as to Counts IX and X must be and herewith is denied.

## Conclusion

For the reasons set forth herein, plaintiffs' motion for reconsideration (document 157) is granted. That part of the

_____

[5]The court notes that a variety of motions addressing these further elements of plaintiffs' claims are before the court but are not yet ready for adjudication.

7

court's April 10, 1996, order defining "Hood dairy products" is vacated, such phrase redefined to include both Hood-branded products and private-label products manufactured by Hood. Additionally, defendant's renewed motion for summary judgment on Counts IX and X due to lack of standing (document 166) is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

September 3, 1996

cc:  Dean B. Eggert, Esq.
     John V. Dwyer, Esq.
     Kenneth A. Cohen, Esq.